UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EMILY HOFFMAN and SCOTT VADEN,

      Plaintiffs,

v.                                        CASE NO. 3:15-cv-29-J-34MCR

R.F. GROUP d/b/a McGowan's HVAC,
CERIDIAN BENEFITS SERVICES, and
RICHARD MULVEY,

      Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendants' Motions to Dismiss Plaintiffs' Complaint ("Motions") (Docs. 10, 12, 14) and Plaintiffs' Responses thereto ("Responses") (Docs. 23, 24, 25).  For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that McGowan's Motion be **DENIED**, and Ceridian and Mulvey's Motions be **GRANTED in part** and **DENIED in part**.

### I.    Background

On January 13, 2015, Plaintiffs, Emily Hoffman ("Hoffman") and Scott

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a).  "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).

Vaden ("Vaden"), proceeding *pro se*, initiated this action against their former employer, R.F. Group doing business as McGowan's HVAC ("McGowan's"), Ceridian Benefits Services ("Ceridian"), and Richard Mulvey ("Mulvey").  (Doc. 1.) Plaintiffs were employed by McGowan's from the summer of 2012 until April 2013.  (*Id.* at ¶ 4.)  Plaintiffs' four-count Complaint alleges violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1022, 1024, 1161, 1163, 1166, with respect to Plaintiffs' participation in a group health insurance plan offered by McGowan's with Blue Cross Blue Shield of Florida.[2] (Doc. 1.)

The Complaint alleges that Plaintiffs' respective health insurance plans were cancelled one month prior to the termination of their employment.  (*Id.* at ¶¶ 19-20.)  The Complaint further alleges that McGowan's, as plan sponsor and administrator of McGowan's Group Health Plan, prevented Plaintiffs, as participants and beneficiaries of the Health Plan, from exercising their right to elect continuation coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"),[3] by failing to provide them with notices required by COBRA and the American Recovery and Reinvestment Act of 2009

---

[2] Plaintiffs attach to their Complaint copies of certificates of creditable coverage, a letter from PrimeMed, printouts from ACCESS Florida website, e-mails from and to McGowan's, and a faxed letter from Blue Cross Blue Shield dated April 26, 2013. (Docs. 1-1, 1-2, 1-3.)

[3] COBRA's provisions appear in ERISA, the Public Health Service Act, and the Internal Revenue Code of 1986.

("ARRA").[4]  (*Id.* at 1-2.)  Plaintiffs allege that as of the date of filing the Complaint, they have not received any correspondence from McGowan's or anyone else concerning their ARRA or COBRA benefits.  (*Id.* at ¶ 27.)

In Count I of the Complaint, Plaintiffs allege that McGowan's, as plan sponsor, failed to provide COBRA coverage to Plaintiffs and their two dependents in violation of 29 U.S.C. § 1161.  (*Id.* at ¶ 30.)  In Count II, Plaintiffs allege that McGowan's, as plan administrator, failed to provide them with a summary plan description in violation of 29 U.S.C. § 1024(b)(1).  (*Id.* at ¶ 33.)  In Count III, Plaintiffs allege that McGowan's, as plan administrator, and McGowan's Group Health Plan failed to provide them, at the commencement of coverage under the Plan, with a written notice of their rights under COBRA in violation of 29 U.S.C. § 1166(a)(1), and as a result of such alleged violation, they did not have notice that they were responsible under 29 U.S.C. § 1166(a)(3) for notifying the plan administrator of the occurrence of the qualifying events described in 29 U.S.C. § 1163(3) and/or (5).  (Doc. 1 at ¶ 36.)  In Count IV of the Complaint, Plaintiffs allege that McGowan's, as plan administrator, failed to provide them, at the time of the qualifying events, with a written notice of their rights to elect COBRA coverage in violation of 29 U.S.C. § 1166(a)(4).  (*Id.* at ¶¶ 39-41.)  Plaintiffs also allege that McGowan's did not notify the plan administrator (*i.e.*, McGowan's), of

---

[4] ARRA requires that an employer notify eligible employees of the availability of a COBRA premium reduction.  *See Rutledge v. Action Prods. Int'l, Inc.*, 2011 WL 3625601, *4 (M.D. Fla. Aug. 17, 2011) (citing Pub. L. 111–5 § 3001(a)).

the COBRA qualifying events described in 29 U.S.C. § 1163(1), (2), (4), & (6). (*Id.* at 2.)

On February 20, 2015, McGowan's filed its Motion to Dismiss, followed by the Motions of the other two Defendants in March of 2015.  (Docs. 10, 12, 14.) On April 2, 2015, this case was referred to the undersigned for a preparation of a scheduling order and a report and recommendation regarding an appropriate resolution.  (Doc. 16.)  On April 6, 2015, the undersigned entered an Order giving Plaintiffs another opportunity to respond to the Motions to Dismiss no later than April 27, 2015.[5]  (Doc. 17.)

On April 17, 2015, Lynn W. Martin, Esq. entered a Notice of Appearance as attorney of record for both Plaintiffs and requested an extension of the deadline for filing a response to the Motions to Dismiss.  (Docs. 18, 19.)  The Court granted the request and set May 4, 2015 as the new deadline for responding to the Motions.  (Doc. 20.)  On May 5, 2015, Plaintiffs filed their Responses to the Motions.[6] (Docs. 23, 24, 25.)

## II.    Motion to Dismiss Standard

To survive a motion to dismiss brought pursuant to Rule 12(b)(6) of the

---

[5] The Order also gave the parties until May 26, 2015 to file a joint case management report.

[6] Plaintiffs' Responses were filed one day late.  Plaintiffs are cautioned that they must comply with the Court's deadlines in the future, or risk facing sanctions for non-compliance.

Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.*  "[B]are assertions" that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim "are conclusory and not entitled to be assumed true."  *Id.* at 680.

In evaluating the sufficiency of a complaint, a court should make reasonable inferences in plaintiff's favor, but is "not required to draw plaintiff's inference."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009)

(internal citation and quotation marks omitted).  "Similarly, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations."  *Id.*  (internal citation and quotation omitted); *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

However, it is well-established that the pleadings of *pro se* litigants must be liberally construed and "are held to less stringent standards than formal pleadings drafted by lawyers."  *Hughes v. Rowe*, 448 U.S. 5, 9 (1980) (per curium).  Further, "[a] court must favor the plaintiff with all reasonable inferences from the allegations in the complaint."  *Allmond v. Bank of America*, 3:07-cv-186-J-33JRK, 2008 WL 205320, at *2 (M.D. Fla. Jan. 23, 2008).

In determining whether to grant or deny a motion to dismiss, the Court must evaluate the complaint "on two dimensions."  *Id.* at *3.  First, the Court must assess whether all the necessary elements required for recovery are addressed in the complaint.  *Id.*  "Second, the Court must determine whether the complaint addresses these elements with factual material sufficient to raise a right to relief beyond mere speculation."  *Id.*  "This material can be either direct or inferential."  *Id.* at *5.

The Court must limit its consideration to the complaint and its attachments.  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir.

1997) (per curiam); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993) (stating "the court limits its consideration to the pleadings and exhibits attached thereto").  "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed.R.Civ.P. 12(d).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).

### III.   Discussion

#### A.   McGowan's Motion

McGowan's asserts that Plaintiffs have failed to state a claim upon which relief can be granted because "[t]he attachments to Plaintiffs' Complaint clearly show Defendants complied with ERISA and the notice requirements of COBRA." (Doc. 10 at 2, 7.)  Defendant also relies on the documents attached to its Motion to Dismiss, which include e-mails, letters, and a certified mail receipt.  (Docs. 10-1, 10-2, 10-3.)  Because McGowan's has submitted matters outside the pleadings, the Court will treat its Motion to Dismiss as one for summary judgment under Fed.R.Civ.P. 56.

McGowan's contends that because it was acting as its own plan administrator, notification by McGowan's, as employer, to McGowan's, as

administrator, was unnecessary under 29 U.S.C. § 1166(a)(2).  Further,

McGowan's contends that it has sufficiently complied with the notice requirement

under 29 U.S.C. § 1166(a)(4)(A).  Although McGowan's does not dispute that

Ceridian's letter sent to Plaintiffs regarding their COBRA rights was returned for

insufficient address, McGowan's asserts that it informed Plaintiffs by multiple e-

mails, as well as by a letter dated June 7, 2013, that COBRA was available to

them until June 17, 2015, and that they should enroll if they want coverage.

Finally, McGowan's contends it was Plaintiffs' responsibility to apply for COBRA

within 60 days of receiving notice, but they chose not to elect continuation

coverage and instead simply wanted their premiums back.

   Although the undersigned agrees with McGowan's that by virtue of its

status as both an employer and plan administrator, McGowan's was aware of

Plaintiffs' termination, the undersigned is not convinced that McGowan's, or any

other Defendant, has adequately complied with the notice requirements of

COBRA.

   Under COBRA, "each qualified beneficiary who would lose coverage under

the plan as a result of a qualifying event is entitled, under the plan, to elect, within

the election period, continuation coverage under the plan."  29 U.S.C. § 1161(a).

Thus, the group health plan is required to provide "at the time of commencement

of coverage under the plan, written notice to each covered employee and spouse

of the employee" of the right to continuation coverage under the plan. 29 U.S.C.

§ 1166(a)(1); *Brown v. Neely Truck Line, Inc.*, 884 F. Supp. 1534, 1540 (M.D.

Ala. 1995) (stating "the plan administrator must provide notification of COBRA

rights to covered employees and their spouses at the commencement of plan

coverage").

In addition, "the occurrence of a qualifying event prompts the additional

notification of COBRA rights." *Brown*, 884 F. Supp. at 1540. More specifically,

"the employer of an employee under a plan must notify the administrator of a

qualifying event [such as termination of a covered employee's employment as

described in 29 U.S.C. § 1163(2)] within 30 days . . . of the date of the qualifying

event." 29 U.S.C. § 1166(a)(2). Then, within fourteen days of being notified of

the qualifying event, the administrator must notify "any qualified beneficiary with

respect to such event, and . . . of such beneficiary's rights" under COBRA, "and

any such notification to an individual who is a qualified beneficiary as the spouse

of the covered employee shall be treated as notification to all other qualified

beneficiaries residing with such spouse at the time such notification is made." 29

U.S.C. §§ 1166(a)(4)(A) & 1166(c).

Where the employer is also the plan administrator, it shall provide each

qualified beneficiary with a COBRA notice within 44 days of either the date on

which coverage is lost due to a qualifying event, or the date on which the

qualifying event occurred, depending on the terms of the plan.  29 C.F.R. § 2590.606–4(b)(2); *see also Roberts v. Nat'l Health Corp.*, 963 F. Supp. 512, 515 (D.S.C. 1997) (finding that an employer who is also an administrator has 44 days, rather than 14 days, to notify an employee of her COBRA rights).  *But see Brown*, 884 F. Supp. at 1540 (finding that the employer who was also the administrator and sponsor of the plan, had an affirmative duty to provide COBRA notice to the employee and his spouse regarding their right to elect continuation coverage under the group plan upon the plan's commencement and *within 14 days* after the employee's termination).

   "Notice is of enormous importance.  The COBRA notification requirement exists because employees are not expected to know instinctively of their right to continue their healthcare coverage."  *Cummings v. Washington Mut.*, 650 F.3d 1386, 1391 (11th Cir. 2011).  However, even if an employee is aware of her COBRA rights, such knowledge "is irrelevant to an employer's duty to provide COBRA notification."  *Brown*, 884 F. Supp. at 1540.  "Likewise, any qualified beneficiary's knowledge of his or her rights does not affect the statutory duty to notify that beneficiary."  *McDowell v. Krawchison*, 125 F.3d 954, 960 (6th Cir. 1997).  "[T]he plan administrator bears the burden of proving that adequate COBRA notification was given to the employee."  *Griffin v. Neptune Tech. Group*, 2015 WL 1635939, *9 (M.D. Ala. Apr. 13, 2015); *see also Smith v. Rogers*

*Galvanizing Co.*, 128 F.3d 1380, 1383 (10th Cir. 1997).  Moreover, "existing case law makes it ostensibly clear that notice is not only required to be delivered to covered employees but to qualifying beneficiaries, as well."  *Brown*, 884 F. Supp. at 1540 (finding that the employer was required to provide both the terminated employee and his spouse with COBRA notice following the employee's termination of employment); *see also McDowell*, 125 F.3d at 959 (declining to interpret the statute as eliminating the need to notify a covered spouse and instead interpreting it as not requiring notice to each covered dependent child living at home, provided that the non-employee parent, the spouse of the covered employee, is notified).

"The notice must be sufficient to permit the discharged employee to make an informed decision whether to elect coverage."  *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1230 (11th Cir. 2002).  Pursuant to 29 U.S.C. § 1166(a), the notice must be provided in accordance with the regulations prescribed by the Secretary.  Prior to 2004, the Secretary of Labor did not promulgate regulations defining adequate notice under 29 U.S.C. § 1166 and the "courts reasoned that employers need only 'operate in good faith compliance with a reasonable interpretation of what adequate notice entails.'" *Griffin*, 2015 WL 1635939 at *10.  However, "now that regulations have been promulgated, employers, and the court, must turn to them for guidance."  *Id.*

Pursuant to the regulations, the notice "shall be written in a manner calculated to be understood by the average plan participant" and must contain, among other information: the name of the plan; the name, address, and telephone number of the party responsible for the administration of continuation coverage benefits; the date on which coverage under the plan will terminate, or has terminated, unless continuation coverage is elected; an explanation of the plan's procedures for electing continuation coverage; an explanation of the consequences of failing to elect or waiving continuation coverage; an explanation of the maximum period for which continuation coverage will be available; a description of the circumstances under which the maximum period of continuation coverage may be extended; the amount that each beneficiary will be required to pay for continuation coverage; the due dates for payments, the grace period for payment, the address to which payments should be sent, and the consequences of delayed payment and non-payment; and a statement that more complete information is available in the plan's summary plan description or from the plan administrator.  29 C.F.R. § 2590.606–4(b)(4).  The notice must be provided to each qualified beneficiary, but a single notice may be provided as to all beneficiaries if they reside at the same location.  29 C.F.R. § 2590.606–4(e).

Also, the notice shall be furnished in any manner consistent with the requirements of 29 C.F.R. § 2520.104b–1.  *See* 29 C.F.R. § 2590.606–4(f).

Pursuant to 29 C.F.R. § 2520.104b–1(b)(1), "the plan administrator shall use measures reasonably calculated to ensure actual receipt of the material by plan participants [and] beneficiaries" and use "a method or methods of delivery likely to result in full distribution."  "Any material sent by second or third-class mail which is returned with an address correction shall be sent again by first-class mail or personally delivered to the participant at his or her worksite."  29 C.F.R. § 2520.104b–1(b)(1).  The plan administrator may also use electronic media to furnish the notice if, *inter alia*, it takes appropriate and necessary measures reasonably calculated to ensure actual receipt of the information, informs the recipient of the right to request and obtain a paper version of the document, and has received the recipient's affirmative consent to electronic delivery.  29 C.F.R. § 2520.104b–1(c)(1)-(2).

In addition, "[t]he administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description," described in 29 U.S.C. § 1022, "within 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits."  29 U.S.C. § 1024(b)(1)(A); *see also Meadows v. Cagle's, Inc.*, 954 F.2d 686, 690-92 (11th Cir. 1992) (finding that sufficient notice had not been provided to the spouse of an incompetent qualified beneficiary where the spouse was never provided with a summary plan description, even though the employee

was provided with a copy of the summary plan description and other plan

materials when she enrolled in the plan, because "ERISA requires that all plan

beneficiaries be provided with copies of documents explaining plan benefits").

"The summary plan description shall include the information described in [29

U.S.C. § 1022(b)], shall be written in a manner calculated to be understood by the

average plan participant, and shall be sufficiently accurate and comprehensive to

reasonably apprise such participants and beneficiaries of their rights and

obligations under the plan."  29 U.S.C. § 1022(a).

Here, neither the attachments to Plaintiffs' Complaint nor the exhibits to

McGowan's Motion show that Defendants have complied with the notice

requirements of COBRA.  First, McGowan's has not shown that it provided, at the

time of commencement of coverage under the plan, Hoffman and Vaden with a

written notice of their right to continuation coverage under the plan pursuant to 29

U.S.C. §1166(a)(1).  Similarly, McGowan's has not shown that it has ever

provided Hoffman, Vaden, or their two dependents, with a copy of the summary

plan description pursuant to 29 U.S.C. § 1024(b)(1)(A), even though Hoffman

requested "a copy of the group plan faxed or emailed" in her e-mail dated April

26, 2013 (*see* Doc. 1-3 at 16).

Furthermore, McGowan's has not shown that it has complied with the

notice requirements as to Hoffman, Vaden, and their two dependents, upon the

occurrence of the qualifying event, *i.e.*, Hoffman's and Vaden's termination of employment.  There is no evidence that a COBRA notice was ever provided to Vaden pursuant to 29 U.S.C. § 1166(a)(4)(A).  As to Hoffman, the April 29, 2013 letter from Ceridian COBRA Services to McGowan's advises that Hoffman has not received her notice of COBRA continuation rights because the notification letter was returned on April 26, 2013 due to insufficient address.  (Doc. 10-1.) There is no evidence that McGowan's provided Ceridian with an updated or corrected address to re-send the notice to Hoffman, or that McGowan's re-send the notice to either Hoffman or Vaden by any other means.[7]  The evidence before the Court merely shows that McGowan's told Hoffman on several occasions, via e-mail, that she had 60 days to enroll in COBRA, that she was still eligible to do so, and that she needed to contact Ceridian if she wanted to elect continuation coverage.[8]  (Doc. 10-2 at 2-3, 7.)  However, neither these e-mails nor Mulvey's letter dated June 7, 2013 were sufficient to meet the notice requirements under

---

[7] Despite the lack of such evidence before the Court, in an e-mail dated May 31, 2013 to Hoffman, Mulvey wrote: "You should have received information from Ceredian [sic], the COBRA facilitator for Blue Cross.  There was a question on your address and I sent them the info you gave me.  Both you and Scott should have received information on enrolling in COBRA."  (Doc. 10-2 at 7.)

[8] As Plaintiffs point out in their Response, McGowan's shifted the burden to them to contact Ceridian to obtain the relevant COBRA documents.  Although it was not Plaintiffs' responsibility to do so, Plaintiffs state they "did contact Ceridian several times," but were continuously referred back to McGowan's and Mulvey.  (Doc. 25 at 8.)

COBRA.[9]  The June 7, 2013 letter from Mulvey to Hoffman provides in relevant

part:

> COBRA: On May 6th I contacted you regarding the COBRA returned
> mail.  I advised you to contact COBRA and correct their information.
> That was 15 days into your 41 days you referred to.  In actuality you
> have 60 days to qualify so you have until June 17th to exercise the
> conversion to COBRA option.  It is up to you to take the necessary
> action to make this happen.  Scott will have the same time frame and
> if it is his wish to elect the COBRA I suggest that he or you contact
> COBRA and request his forms. . . . If you want COBRA coverage all
> you have to do is contact CEREDIAN [sic]. Then you will have
> benefits continued from April 17th forward.

(Doc. 10-3 at 2.)[10]

Although the above-cited letter and the e-mails between the parties may

have made Hoffman aware of COBRA rights in general, Defendant has not

shown that an adequate notice under 29 U.S.C. § 1166 was provided to any

qualified beneficiary in this case.  For example, there is no evidence that any

beneficiary under the plan, including Hoffman, was ever advised of all the

---

[9] To the extent Defendant argues that Plaintiffs simply wanted their premiums
back, instead of COBRA continuation coverage, based on a single line in a June 8,
2013 e-mail from Hoffman to Mulvey (*see* Doc. 10-2 at 3), this argument is rejected.
There is no indication in that e-mail, or anywhere, that Plaintiffs were not interested in
COBRA coverage and that they were only interested in getting their premiums back
after Defendant allegedly cancelled their insurance a month prior to their termination.
The e-mail exchange between the parties seems to indicate that Plaintiffs wanted both
their premiums for the period during which their insurance was cancelled prematurely
and continuation coverage under COBRA.  (*See* Doc. 10-2.)

[10] Although this letter references certain attachments, no attachments to the letter
were filed with the Court.  A certified mail receipt with a delivery date of June 8, 2013
was filed following the letter.

information that needed to be included in the notice pursuant to 29 C.F.R. §

2590.606–4(b)(4).  This information included, *inter alia*, an explanation of the

consequences of failing to elect or waiving continuation coverage, an explanation

of the maximum period for which continuation coverage will be available, a

description of the circumstances under which the maximum period of continuation

coverage may be extended, the amount that each beneficiary will be required to

pay for continuation coverage, the due dates for payments, the grace period for

payment, the address to which payments should be sent, and the consequences

of delayed payment and non-payment.

   In addition, it is questionable whether Hoffman, or any other beneficiary

under the plan residing in the same household, was properly notified of the date

on which coverage under the plan would terminate, or had terminated.  The

evidence submitted to the Court tends to support Plaintiffs' position that their

health benefits were cancelled on March 15 and 16, 2013, rather than in April

2013 when both Plaintiffs were terminated.  (*See* Doc. 1-1 at 1, 4; Doc. 1-3 at 6.)

Although McGowan's may have corrected the end date of coverage for Hoffman,

there is no indication as to whether this was ever done as to Vaden.  (*See* Doc. 1-

3 at 10 ("You left McGowan's on 4/16[.] That is the date your medical plan should

have ended.  The records now show that as fact.  Lets forget about going back to

what was and deal with what is, your termination date is at this time correct.").)

Thus, assuming that Hoffman's health coverage ended on April 16, 2013, as corrected, and Vaden's coverage ended in March 2013, Defendant's notice needed to inform each beneficiary of the date on which his or her coverage had terminated and their respective deadlines to elect and pay for continuation coverage.  Moreover, to the extent Defendant asserts that the e-mail exchange between the parties was sufficient to satisfy the notice requirements under COBRA, Defendant has not shown that the prerequisites for using electronic media to furnish the notice have been met, including, but not limited to, obtaining the recipient's affirmative consent to electronic delivery, as set forth in 29 C.F.R. § 2520.104b–1(c)(1)-(2).

Based on the foregoing, Defendant has not shown that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  Therefore, the undersigned recommends that McGowan's Motion to Dismiss, construed as a Motion for Summary Judgment, be denied.

### B.    Ceridian's and Mulvey's Motions

Defendants Ceridian and Mulvey move for an order dismissing them from the case with prejudice pursuant to Fed.R.Civ.P. 12(b)(6).  Defendants argue that Plaintiffs have failed to state any claims against them because there is no mention of these Defendants anywhere in Plaintiffs' Complaint, other than in the caption of the case.  Defendants further argue that even if Plaintiffs had sought to

allege a claim against them, that claim would be dismissed as a matter of law because these Defendants were neither the group health plan nor the plan administrator, and as such, they could not be liable for any of the claims alleged in the Complaint.

Plaintiffs respond that at the time the Complaint was filed, they were not represented by counsel and the proper remedy for the pleading deficiencies identified by Defendants is a dismissal without prejudice with leave to amend the Complaint.  Plaintiffs contend, upon information and belief, that Ceridian may be the plan and/or the insurer of the benefits, and Mulvey may be the plan administrator, and, therefore, dismissal as a matter of law is not appropriate.

The undersigned agrees with Defendants that Plaintiffs' Complaint does not state a claim on which relief may be granted against Ceridian and Mulvey because there are no allegations with respect to these two Defendants anywhere in the body of the Complaint.[11]  However, given that Plaintiffs filed the Complaint

_____

[11] Additionally, Plaintiffs' Complaint is an impermissible "shotgun pleading."  A shotgun complaint "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions."  *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).  Consequently, in ruling on the sufficiency of a claim, the Court is faced with the onerous task of sifting out irrelevancies in order to decide for itself which facts are relevant to a particular cause of action asserted. *See id.*  Here, each subsequent count of the four counts in the Complaint incorporates by reference all allegations of each of the preceding counts.  Because in the Eleventh Circuit, shotgun pleadings of this sort are "altogether unacceptable," *Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997), the Court may strike the Complaint on this basis.

*pro se*, and that no amendment of the Complaint has been previously requested, the undersigned recommends that Plaintiffs be given an opportunity to properly seek leave to amend the Complaint to cure the pleading deficiencies as to Ceridian and Mulvey.[12]  Further, in light of Plaintiffs' statement that they may be able to plead that Ceridian is the plan and/or the insurer of the benefits, and Mulvey is the plan administrator, it does not appear that dismissal as a matter of law is appropriate at this time.  Therefore, the undersigned recommends that Ceridian's and Mulvey's Motions be granted in part and denied in part.  To the extent the Motions seek dismissal with prejudice and an award of fees and costs in bringing these Motions, the undersigned recommends that the Motions be denied.  The undersigned recommends that Ceridian and Mulvey be dismissed from the case without prejudice, and Plaintiffs be allowed to file a proper motion seeking leave to amend the Complaint within twenty (20) days of the Court's order on this Report and Recommendation.

Accordingly, the undersigned respectfully **RECOMMENDS** that:

1.      McGowan's Motion to Dismiss (**Doc. 10**), construed as a Motion for Summary Judgment, be **DENIED**.

2.      Ceridian's and Mulvey's Motions to Dismiss (**Docs. 12 & 14**) be

---

[12] To the extent Plaintiffs request leave to amend the Complaint as part of their Responses to the Motions to Dismiss, such a request is improper.  A request for affirmative relief must be included in a motion, either setting forth the substance of the proposed amendment or attaching a copy of the proposed amendment, and complying with all applicable rules, including Local Rule 3.01(g).

**GRANTED in part** and **DENIED in part**.

3.      Defendants Ceridian and Mulvey be dismissed from the case without prejudice, and Plaintiffs be allowed to file a proper motion seeking leave to amend the Complaint within twenty (20) days of the Court's order on this Report and Recommendation.

4.      The proposed consent to the exercise of jurisdiction by a United States Magistrate Judge (**Doc. 21**), which is signed by Plaintiffs only, be **STRICKEN**.[13]

        **DONE AND ENTERED** at Jacksonville Florida, on May 20, 2015.

                                                MONTE C. RICHARDSON
                                        UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

---

[13] If all parties consent to the exercise of jurisdiction by a United States Magistrate Judge, the consent form needs to be signed by all parties or their counsel before it is filed with the Court.